IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LA'MOORE QUEEN DEVI                :

                                   :

     v.                            :     Civil Action No. DKC 16-3790

                                   :

PRINCE GEORGE'S COUNTY, et al.
                                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is the motion for summary judgment filed by Defendants Prince George's County (the "County") and Prince George's County Police Officers Alton Bradley and Daniel Conley. (ECF No. 42). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

I.   **Background**

    A.   **Factual Background**[1]

    On March 8, 2015, Plaintiff La'Moore Queen Devi ("Plaintiff") was driving through the parking lot of an apartment complex in Temple Hills, Maryland, when she was pulled over by private security for the apartment complex for failing to stop at a stop sign. (ECF No. 43-2, at 4). The security

---

    [1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

officer informed Plaintiff that he was going to issue her a citation for failing to stop at the stop sign.[2] (*Id.* at 5). That same day, after Plaintiff left the apartment complex, Defendant Bradley was dispatched to the apartment complex in response to a call for trespassing. (ECF No. 42-4, at 4-5). The apartment security officers informed Defendant Bradley that they banned Plaintiff from the premises. (*Id.* at 5). The security officers did not provide Defendant Bradley with a citation issued to Plaintiff for trespass but stated that they verbally informed Plaintiff that she was banned from the premises. (*Id.*). Plaintiff disputes that she was informed that she was banned from the premises. (ECF Nos. 42-3, at 9:05-9:12 (Video recording of Plaintiff's arrest shows that Plaintiff asked what was she being arrested for and responded that she was not trespassing but was only stopped by security officers the day before for failing to stop at a stop sign); 43-2, at 4 (Plaintiff's testimony in deposition that she was "trying to figure out" why she was "getting locked up")).

On March 9, Jabari Bishop, another security officer for the apartment complex who "knew that [Plaintiff] was barred from the apartment complex on March 8," called 911 and reported a complaint for trespass after he observed Plaintiff on the

---

[2] It is unclear whether Plaintiff actually received a citation.

premises of the apartment complex. (ECF Nos. 42-7 ¶¶ 2-5; 44-1 (audio recording of the 911 call)). Defendants Bradley and Conley arrived at the apartment complex in response to Mr. Bishop's call, and Mr. Bishop informed them that Plaintiff had returned to the premises after being banned the day before. (ECF No. 42-7 ¶¶ 6-7).

Defendants submitted a video recording obtained from a body camera worn by one of the security officers that depicts the following events. As seen in the video, Defendants Bradley and Conley and the security officers walked to the apartment that Plaintiff was in, and Defendant Bradley knocked on the door. (ECF Nos. 42-3, at 7:20-8:10; 42-4, at 10). Plaintiff answered the door, and Defendant Bradley advised Plaintiff that she was under arrest. (ECF Nos. 42-3, at 9:04; 42-4, at 10-11). Plaintiff responded, "What for?" (ECF No. 42-3, at 9:05). Defendant Bradley advised Plaintiff that she was under arrest for trespassing. (ECF Nos. 42-3, at 9:06; 42-4, at 11). Plaintiff replied that she was not trespassing and explained to Defendant Bradley that she was stopped by a security officer the day before for not stopping at a stop sign. (ECF No. 42-3, at 9:07-9:12). Defendant Bradley asked Plaintiff whether she was going to put her bags down. (ECF Nos. 42-3, at 9:12-9:13; 42-4, at 11). Plaintiff went into the apartment to put her bags down, and Defendants Bradley and Conley entered into the apartment

3

behind her. (ECF Nos. 42-3, at 9:24-9:35; 42-4, at 11). Plaintiff disputes that she resisted arrest. The video shows that when Defendant Bradley attempted to grab Plaintiff's arm to effectuate the arrest, Plaintiff swung her arm in the air while walking away from Defendant Bradley. (ECF Nos. 42-3, at 9:38-9:40; 42-4, at 12). Officer Conley stepped in front of Plaintiff to stop her from walking any further, and Defendants Bradley and Conley then pushed Plaintiff to a nearby wall to get her arms behind her back and handcuff her. (ECF No. 42-3, at 9:40-10:30). Plaintiff again explained that she was only stopped the day before for not stopping at a stop sign, and Defendants Bradley and Conley escorted her out of the apartment. (*Id.* at 10:32-10:55).

Plaintiff was charged with trespassing upon private property, resisting arrest, and failing to obey a lawful order of a law enforcement officer. (ECF No. 43-6). Those charges were dismissed *nolle prosequi* on December 7, 2015. (ECF No. 1-4).

### B. Procedural Background

On February 2, 2018, Defendants moved for summary judgment on Plaintiff's remaining claims of malicious prosecution (Count I) and gross negligence (Count III) against Defendants Bradley and Conley and Plaintiff's claim of excessive force (Count V)

against all Defendants.[3] (ECF No. 42). On February 16, Plaintiff filed a response in opposition (ECF No. 43), and Defendants replied (ECF No. 44).

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir.

---

[3] Plaintiff's other claims were dismissed at the motion to dismiss stage. (ECF Nos. 31; 32).

5

2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

**III. Analysis**

 **A. Malicious Prosecution Claim**

Defendants Bradley and Conley argue that Plaintiff's malicious prosecution claim fails because probable cause existed to arrest Plaintiff for trespass. (ECF No. 42-1, at 8). To establish the tort of malicious prosecution, a plaintiff must show: 1) the defendant instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in the plaintiff's favor; 3) the defendant did not have probable cause to institute the proceeding; and 4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice. *Okwa v. Harper*, 360 Md. 161, 183 (2000).

"Probable cause exists when the facts and circumstances within an officer's knowledge – or of which he possesses reasonably trustworthy information – are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000).

> To determine whether an officer had probable cause, . . . the reviewing court necessarily must relate the information known to the

6

> officer to the elements of the offense that the officer believed was being or had been committed. The officer, of course, must undertake the same analysis in determining, in the first instance, whether the person may lawfully be arrested.

*DiPino v. Davis*, 354 Md. 18, 32 (1999). Wanton trespass on private property prohibits a person from (1) entering private property, (2) after being notified by the owner or the owner's agent not to do so, (3) unless entering under good faith claim of right or ownership. Md.Code Ann., Crim. Law § 6-403(a) (West 2010).

Here, Defendants Bradley and Conley had probable cause to believe that Plaintiff was trespassing. On March 8, the day before Plaintiff's arrest, Defendant Bradley arrived at the apartment complex in response to a call for trespass. (ECF No. 42-4, at 4-5). Defendant Bradley was informed by private security for the apartment complex that they banned Plaintiff from the premises and verbally informed her of such. (*Id.* at 5). On March 9, Defendants Bradley and Conley arrived at the apartment complex, in response to Mr. Bishop's 911 call reporting that Plaintiff was trespassing. (ECF Nos. 42-7 ¶ 6; 44-1). Mr. Bishop informed Defendants Bradley and Conley that Plaintiff was back on the premises after being banned the day before (ECF No. 42-7 ¶ 7), and Defendant Conley heard Defendant Bradley state that he was at the apartment complex the day

before and was informed by the security officers that Plaintiff was banned from the premises (ECF Nos. 42-3, at 6:47-6:53; 42-5, at 6). Although Plaintiff expressed that she was only stopped by the security officers the day before for failing to stop at a stop sign, Defendants Bradley and Conley were informed that the security officers verbally notified Plaintiff that she was banned from the premises.[4] "Reasonable law enforcement officers are not required to . . . resolve every doubt about a suspect's guilt before probable cause is established." *Wadkins*, 214 F.3d at 541 (internal quotation marks and citations omitted); *Krause v. Bennett*, 887 F.2d 362, 371 ($2^d$ Cir. 1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful."). Rather, "officers must be given leeway to draw reasonable conclusions from confusing and contradictory information." *Taylor v. Farmer*, 13 F.3d 117, 121 (4th Cir. 1993). Defendants Bradley and Conley had no reason to question the reliability of the security officers who had first-hand knowledge of Plaintiff being banned from the premises on March 8. Defendants Bradley and Conley

---

[4] Tyesha Roberts, the tenant of the apartment where Plaintiff was located, explained to Defendants Bradley and Conley that Plaintiff did nothing wrong the day before. (ECF No. 42-3, at 7:06-7:08). However, it is immaterial *why* Plaintiff was banned. Defendants Bradley and Conley only needed to believe that Plaintiff returned to the apartment complex after being notified by the security officers that she was banned from the premises.

reasonably concluded from the information they received from the security officers on March 8 and March 9 that Plaintiff entered upon private property, after being notified by the owner's agent, *i.e.,* the private security officers, not to do so, and that she did not enter the property under a good faith claim of right or ownership. Therefore, probable cause existed to institute the criminal proceeding against Plaintiff for trespass, and Plaintiff has failed to meet an essential element of her malicious prosecution claim. Additionally, Plaintiff has not established that Defendants Bradley and Conley acted with malice or a primary purpose other than bringing the plaintiff to justice. Plaintiff relies solely on a lack of probable cause to infer prejudice. (ECF No. 43, at 21). As considered above, probable cause existed for Plaintiff's arrest. Without any proof that Defendants Bradley and Conley acted with malice, Plaintiff's malicious prosecution claim fails for an additional reason. Summary judgment will be granted in favor of Defendants Bradley and Conley as to Plaintiff's malicious prosecution claim.

**B.  Fourth Amendment Excessive Force Claim**

Section 1983 prohibits a person acting under the color of law from depriving another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In Count V of Plaintiff's complaint, Plaintiff alleges

9

that Defendants Bradley and Conley deprived her of her Fourth Amendment rights in violation of § 1983 when they arrested her without probable cause. (ECF No. 1 ¶¶ 77, 78). Plaintiff does not assert a claim against the County under Count V but requests relief against Defendants Bradley, Conley, and the County, jointly and severally. (*Id.* at 13). Plaintiff incorrectly asserts that "the County is a proper party to this claim as an indemnitor in connection with the alleged constitutional violations." (ECF No. 43, at 19). Although Section 5-303(b) of the Local Government Tort Claims Act ("LGTCA") requires the County to indemnify a judgment against its employee for damages resulting from a tortious act committed by the employee within the scope of employment, the LGTCA does not permit a plaintiff to sue the County directly. *Williams v. Prince George's Cty.*, 112 Md.App. 526, 554 (1996) (citing *Khawaja v. Mayor & City Council, City of Rockville*, 89 Md.App. 314, 325-36 (1991)). There is no *respondeat superior* liability under § 1983, and the County can be sued directly under § 1983 only if the alleged unconstitutional action Plaintiff complains of resulted from a County policy, practice or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). Plaintiff brought claims against the County in Count VI of her complaint, alleging failure to train properly and unconstitutional customs with respect to excessive force, which were dismissed at the motion

10

to dismiss stage (ECF No. 31, at 8-11). Therefore, the County cannot be sued directly for Plaintiff's excessive force claim against Defendants Bradley and Conley and judgment will be entered in favor of the County.

Plaintiff argues that because there was no probable cause for her arrest, any force used by Defendants Bradley and Conley was excessive, in violation of the Fourth Amendment. (ECF No. 43, at 14). As previously mentioned, probable cause existed for Plaintiff's arrest, and her argument to the contrary fails. Plaintiff alternatively argues that "even if the officers had probable cause to effectuate an arrest, the amount of force used in this case was excessive." (*Id.*). The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force during the course of an arrest. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). "Whether an officer has used excessive force is analyzed under a standard of objective reasonableness." *Id.* "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them," recognizing that "officers are often forced to make split-second judgments." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This inquiry "requires careful attention to . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is

11

actively resisting arrest or attempting to evade arrest by flight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted).

Plaintiff appears to argue that no force was necessary at all to effectuate her arrest. Plaintiff contends that "[a] reasonable officer would have called out or given some form of verbal command prior to using excessive force[,]" and, "[a]lternatively, the officers could have proceeded to confirm that [Plaintiff] was not wanted on the property, and merely escorted [her] of[f] the premises[.]" (ECF No. 43, at 17). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Although Plaintiff contends that she was compliant and did not resist arrest, the video recording clearly shows that any force used by the officers was minimal and due to Plaintiff's continuous movement after being advised that she was under arrest for trespass.[5] When Defendant Bradley attempted to grab Plaintiff's

---

[5] "When opposing parties tell two different stories, one of which is *blatantly contradicted* by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added) (finding that the videotape in the record

arm to effectuate her arrest, Plaintiff swung her arm in the air, breaking his hold, while walking away from Defendant Bradley. (ECF Nos. 42-3, at 9:38; 42-4, at 12). Plaintiff then swung her other arm and threw her keys to the tenant of the apartment, Ms. Roberts, while Officer Bradley attempted to get Plaintiff's hands behind her back to handcuff her. (ECF No. 42-3, at 9:38-9:41). Officer Conley stepped in front of Plaintiff to stop her from walking any further, and Defendants Bradley and Conley then pushed Plaintiff to the nearby wall to get her arms behind her back and handcuff her. (*Id.* at 9:40-10:30). Officers Bradley and Conley only used the force necessary to handcuff Plaintiff who was continuously moving during the course of her arrest. This force was not excessive, and judgment will be granted in favor of Defendants as to Plaintiff's excessive force claim.

**C. Gross Negligence**

Defendants Bradley and Conley argue that Plaintiff's gross negligence claim fails because they "acted reasonably and arrested Plaintiff based on probable cause" and "did not act recklessly with disregard for the consequences of their actions." (ECF No. 42-1, at 17).

---

clearly contradicted the nonmoving party's version of the facts and that the lower courts had to view the facts in the light depicted by the videotape).

Under Maryland law, gross negligence is viewed "as something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (citing *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 384 Md. 213, 229 (2004)).

> Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

*Id.* (citations omitted). "An officer's actions are grossly negligent when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences.'" *Henry*, 652 F.3d at 536 (citation omitted). Plaintiff argues that "[t]he facts of this case show that the defendants willfully disregarded [Plaintiff's] rights when they unlawfully used excessive force in grabbing [Plaintiff's] arms and pushing her up against a wall[,]" and that "[t]he ensuing arrest in prosecution of [Plaintiff] further violated her rights as there

was no probable cause[.]" (ECF No. 43, at 24). Again, probable cause existed for Plaintiff's arrest and the force used by Defendants was not excessive. The actions of Defendants do not constitute a "gross departure" from ordinary conduct or reckless conduct. Therefore, judgment will be granted in favor of Defendants Bradley and Conley as to Plaintiff's gross negligence claim.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants Prince George's County, Alton Bradley, and Daniel Conley will be granted. A separate order will follow.

___/s/___
DEBORAH K. CHASANOW
United States District Judge
